UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jackson Mafuila Mafuta,                                  Civil No. 22-2512 (DWF/DLM)

                Plaintiff,

v.                                                       MEMORANDUM
                                                         OPINION AND ORDER
Wells Fargo Bank,

                Defendant.

## INTRODUCTION

This matter is before the Court on Defendant Wells Fargo Bank's motion for summary judgment. (Doc. No. 18.) *Pro se* Plaintiff Jackson Mafuila Mafuta has not responded to the motion. For the reasons set forth below, the Court grants Wells Fargo's motion.

## BACKGROUND

Mafuta began working for Wells Fargo in 2013. (Doc. No. 21-1, Ex. 2 at 18.) He most recently worked as an Associate Operations Processor. (*Id.*) Mafuta is Christian and was diagnosed with bipolar disorder. (Doc. No. 21-1, Ex. 1 ("Mafuta Dep.") at 55, 95.) Mafuta, however, did not like to discuss his diagnosis at work and described it as "confidential." (*Id.* at 92.) He also did not discuss his religion with his manager. (*Id.* at 96.)

On October 7, 2021, Mafuta encountered two other Wells Fargo employees in the bathroom. (*Id.* at 59.) One of the employees said "some religious stuff" to Mafuta, such

as "you are a very great son" and "you are a very high level of spirits." (*Id.*) Mafuta took this personally. (*Id.*) To the other employee, Ryan Peterson, Mafuta said he had red skin just like the "red person" who "come" during the "apocalypse." (*Id.* at 60-62.) Mafuta said these comments were his "religious point of view." (*Id.* at 62.)

When Mafuta left the bathroom, he got into a confrontation with other employees. He approached Bahiru Ayano and asked him whether he knew Ryan Peterson. (Doc. No. 26 ("Ayano Decl.") ¶ 5.) Ayano described Mafuta's demeanor as aggressive. (*Id.* ¶ 7.) Mafuta also told Ayano, who was from Ethiopia, that Ethiopia was a "fake country" and was "going to be destroyed." (Mafuta Dep. at 60.)

His supervisor at the time, Joseph Gaona, observed Mafuta from across the room visibly upset and yelling at other team members. (Doc. No. 22 ("Gaona Decl.") ¶¶ 4-7.) He also observed Mafuta enter Natasha Mills's cubicle and throw his badge at her. (*Id.* ¶ 7.) Mills and other employees nearby also reported that Mafuta threw an object at her. (Doc. No. 27 ("Mills Decl.") ¶ 8; Ayano Decl. ¶ 8.) Mills reported that she felt afraid because Mafuta was blocking her exit and yelling at her. (Mills Decl. ¶¶ 6-8.) During the confrontation, Mafuta also got close to Darin Gutzmer and yelled, "You don't know me," and flicked his chin. (Doc. No. 28 ("Gutzmer Decl.") ¶¶ 5-7.) When Gaona approached Mafuta, Mafuta told him that he "better step away," which Gaona interpreted as a threat. (Gaona Decl. ¶ 8.) Security then arrived and Mafuta exited the building. (*Id.* ¶ 9.)

Later that day, a friend of Mafuta's called the police and requested a wellness check for Mafuta. (Doc. No. 21-1, Ex. 6 at 58.) The friend said that he spoke with

Mafuta on the phone and that he was not making sense. (*Id.*) The police knocked on Mafuta's door. (*Id.*) When Mafuta answered, he was completely naked, holding a phone in his hand and slapping the phone. (*Id.*) The police told him that because he was acting erratically, he needed to go to the hospital. (*Id.*)

On October 15, John Gannaway, a Senior Security Agent for Wells Fargo, called Mafuta. (Doc. No. 23 ("Gannaway Decl.") ¶ 9.) Mafuta told Gannaway that he had a bipolar episode on October 7. (*Id.*) Gannaway asked Mafuta to give a written statement, but Mafuta never did. (*Id.* ¶ 10.)

Mafuta was placed on paid administrative leave. (Gaona Decl. ¶ 15.) Shortly after, Gaona met with David Medina, who was an Employee Relations Consultant for Wells Fargo. (*Id.* ¶ 16; Doc. No. 25 ("Medina Decl.") ¶ 2.) Medina concluded that Mafuta's behavior was a major violation because "there were multiple instances of physical contact and unprofessional workplace conduct," with the intent to harm one or more employees. (Medina Decl. ¶ 11.) Gaona also concluded that Mafuta violated the Professionalism, Workplace Conduct, and Violence Free Workplace policies. (Gaona Decl. ¶ 16.) Medina recommended terminating Mafuta's employment. (*Id.*) Gaona decided to terminate Mafuta's employment based on the conduct he observed, the observation of other employees, the policies that Mafuta violated, and Medina's recommendation. (*Id.* ¶ 17.)

Mafuta brought this action against Wells Fargo, asserting two claims: (1) religious discrimination in violation of the Title VII of the Civil Rights Act of 1964 and (2) disability discrimination in violation of the Americans with Disabilities Act ("ADA").

3

Wells Fargo now moves for summary judgment. (Doc. No. 18.) Mafuta had until October 11, 2023, to submit a response. The Court gave Mafuta a second opportunity to respond, directing him to file a response by May 24, 2024. (Doc. No. 31.) Mafuta has not responded to the motion.

## DISCUSSION

### I. Legal Standard

Although Mafuta has not responded to Wells Fargo's motion, "summary judgment cannot be granted by default even if there is a complete failure to respond to the motion." Fed. R. Civ. P. 56(e) advisory committee's note to 2010 amendment. The Court therefore must still "analyze the portions of the record cited by [Wells Fargo] to determine whether that evidence shows" that summary judgment is warranted. *Aery v. Mend*, No. 21-cv-2422, 2023 WL 5280318, at *4 (D. Minn. July 21, 2023), *report and recommendation adopted*, 2023 WL 5279765 (D. Minn. Aug. 16, 2023).

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party opposing a motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. "Conclusory arguments, without evidence, are insufficient as a matter of law to establish a material question of fact." *Sieden v. Chipotle Mexican Grill, Inc.*, 846 F.3d 1013, 1019 (8th

Cir. 2017). The Court views the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009).

**II.     Disability Discrimination**

Mafuta's first claim is disability discrimination under the ADA. The ADA prohibits a covered employer from discriminating "on the basis of disability." 42 U.S.C. § 12182. A plaintiff can prove a claim of disability discrimination through either direct or indirect evidence of discrimination. Here, there is no evidence of direct discrimination, so Mafuta's claim must be analyzed under the *McDonnell Douglas* burden-shifting analysis. *Anderson v. KAR Glob.*, 78 F.4th 1031, 1036 (8th Cir. 2023). The first step is for the plaintiff to establish a prima facie case of discrimination. *Id.* To do so, the plaintiff must demonstrate that "(1) he is a disabled person as defined by the ADA, (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered an adverse employment action because of his disability." *Id.* (internal quotations and citation omitted).

If the plaintiff establishes a prima facie case, "the burden of production then shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse action." *Id.* (internal quotations and citation omitted). "The burden then shifts back to the plaintiff to show that the proffered reason was, in reality, a pretext for discrimination." *Id.* at 1037 (internal quotations and citation omitted).

Here, Wells Fargo does not dispute that Mafuta is a disabled person, he was qualified to perform the essential functions of his job, and he was terminated. Wells

5

Fargo argues, however, that Mafuta has not demonstrated a causal connection between the adverse employment action (his termination) and his disability. Mafuta's only evidence of causation is the temporal proximity between his bipolar episode, the disclosure of his bipolar disorder to Gannaway, and his termination. Gaona testified, however, that he decided to terminate Mafuta's employment based on the conduct he observed—namely, Mafuta yelling at other employees, throwing an object at an employee, touching another employee, and acting in a threatening manner towards Gaona—as well as the observation of other employees, the policies that Mafuta violated, and Medina's recommendation. "Especially where the employer's proffered reason for action is virtually contemporaneous with the protected activity, [the Eighth Circuit] is disinclined to declare a genuine issue of fact for trial based on temporal proximity alone." *Hill v. Walker*, 737 F.3d 1209, 1219 (8th Cir. 2013). Moreover, it appears Mafuta only disclosed his disability to Wells Fargo *after* the October 7 confrontation, and there is no evidence that Gaona knew about the disability until after he chose to terminate Mafuta's employment. Nor is there evidence that Mafuta requested any sort of accommodation for his disability at any point during his employment.

    The Court therefore concludes that Mafuta has failed to establish a prima facie case of disability discrimination. In addition, Wells Fargo has provided a legitimate nondiscriminatory reason for the adverse action and there is no evidence of pretext. The Court grants summary judgment on this claim.

**III.     Religious Discrimination**

Mafuta's last claim is religious discrimination under Title VII. Title VII prohibits discharging an individual, or discriminating against someone, because of their religion. 42 U.S.C. § 2000e-2(a)(1). Similar to discrimination under the ADA, a plaintiff can demonstrate religious discrimination through direct or indirect evidence of discrimination. Because Mafuta has not provided direct evidence of discrimination based on his religion, the *McDonnell Douglas* burden-shifting framework applies. Mafuta must first establish a prima facie case of discrimination by demonstrating that he "(1) [is] a member of a protected class; (2) w[as] qualified for the position from which [he] was discharged; (3) w[as] discharged; and (4) w[as] replaced by a non-member of the protected class." *Aronson v. Olmstead Med. Ctr.*, 668 F. Supp. 3d 843, 851 (D. Minn. 2023) (internal quotations and citation omitted). "The fourth element can also be met if circumstances exist that give rise to an inference of discrimination." *Id.* (internal quotation and citations omitted).

Mafuta has failed to establish a prima facie case because, as a matter of law, these circumstances do not give rise to an inference of discrimination. There is no evidence in the record that Wells Fargo treated similarly situated employees who were not members of the protected class differently. And as Gaona noted, Wells Fargo has not hired anyone to replace Mafuta. Moreover, there is no evidence that Gaona knew about Mafuta's religion. Mafuta admitted in his deposition that he is not sure if Gaona knew that he was Christian. (Mafuta Dep. at 96.) Nor is there evidence that Ayano or Peterson understood Mafuta to be expressing his religious beliefs during their encounters with him. Mafuta

told Ayano that Ethiopia is a fake country and told Peterson that he had red skin. Neither of the comments appear to be obviously religious in nature, and it does not appear that Mafuta told them that these were his religious beliefs.

As noted above, Gaona testified that he decided to terminate Mafuta's employment based on Mafuta yelling at other employees, throwing an object at an employee, touching another employee, and acting in a threatening manner towards employees, including Gaona, as well as the policies that Mafuta violated, and Medina's recommendation. Wells Fargo has put forth a legitimate non-discriminatory reason for Mafuta's termination and there is no evidence in the record of pretext. For those reasons, the Court grants summary judgment on this claim.

## CONCLUSION

For the reasons outlined above, the Court grants Wells Fargo's motion for summary judgment.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Wells Fargo's motion for summary judgment (Doc. No. [18]) is **GRANTED**.

2.  Mafuta's claims against Wells Fargo are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINLY.**

Dated:  July 3, 2024               s/Donovan W. Frank
                                                  DONOVAN W. FRANK
                                                  United States District Judge